UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MARILEE L. ARNOLD,

                Plaintiff,

v.                                          Case No.  5:06-cv-239-Oc-10GRJ

MICHAEL J. ASTRUE,[1]  Commissioner of
Social Security,

                Defendant.

_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits. (Doc. 1.)  The Commissioner has answered (Doc. 8) and both parties have filed briefs outlining their respective positions.  (Docs. 17 & 18.)  For the reasons discussed below, the Commissioner's decision is due to be **REVERSED AND REMANDED**.

## I. PROCEDURAL HISTORY

On December 12, 2003, Plaintiff filed an application for disability insurance benefits claiming a disability onset date of March 26, 2002. (R. 54-56.)  Plaintiff's application was denied initially (R. 26-30), and upon reconsideration. (R. 38-39.) Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ").

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The ALJ conducted Plaintiff's administrative hearing on April 5, 2005 (R. 284-307) and issued a decision unfavorable to Plaintiff on October 6, 2005. (R.12-25.)  The Appeals Council denied Plaintiff's request for review on May 25, 2006. (R. 6-8.)  On July 13, 2006, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II.  <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[2] <u>See</u> 42 U.S.C. § 405(g).

[3] <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] <u>Edwards</u>, 937 F.2d at 584 n.3; <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] <u>Foote</u>, 67 F.3d at 1560; *accord,* <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); <u>Parker v. Bowen</u>, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[6]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her

---

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

---

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (internal citations omitted).

[17] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[18] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[19] Walker at 1003.

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

### III.  SUMMARY OF THE EVIDENCE

Plaintiff was born on March 24, 1948 and was fifty-seven (57) years old at the time of the decision. (R. 288.) Plaintiff has a high school education (R. 289) and past relevant work history as a cashier and food server. (R. 291-294.) Plaintiff contends that she has been unable to work since March 26, 2002, due to high blood pressure, post-menopausal depression, short term memory loss, osteoporosis in the left hip, leg and the right side of her neck. (R. 63.)

The Court's evaluation of the medical record will focus upon Plaintiff's alleged mental impairments, as Plaintiff's mental limitations are the  primary focus of Plaintiff's challenge to the decision by the ALJ.

Plaintiff's medical records reveal that Plaintiff was treated for depression from July 2002 through August 2002 by Glen Morgan, M.D., a family physician. (R. 241-245.) Plaintiff was prescribed Effexor for depression, but reported having nightmares. (R. 245,

---

[20] Wolfe at 1077-78.

[21] See id.

[22] See Doughty at 1278 n.2.

250.) On July 22, 2002, Plaintiff reported to Dr. Morgan that she was having crying spells, difficulty sleeping, and short term memory loss over the course of the several months prior to her visit, which Dr. Morgan thought might be related to her depression. (R. 245.) Examination revealed her blood pressure was elevated and Dr. Morgan noted that Plaintiff was anxious and tearful at times. Dr. Morgan diagnosed Plaintiff with anxiety, depression with some evidence of obsessive-compulsive disorder and subjective memory loss. Dr. Morgan "strongly" recommended counseling. Plaintiff was given samples of Zoloft for her depression.

On August 15, 2002, Plaintiff returned to Dr. Morgan's office with complaints of memory problems, flashbacks of her childhood, nausea, personality symptoms, and paranoid symptoms. Plaintiff reported that she felt people were taking pictures of her in her apartment and that she felt suspicious of neighbors. Plaintiff stated that she did not go to Marion Citrus Mental Health because she did not want to leave her home. Plaintiff also reported waking up at 3:00 A.M. and being unable to go back to sleep. Dr. Morgan noted that Plaintiff became very tearful and had a flat affect. Plaintiff was prescribed Paxil and was strongly encouraged to see Dr. Simpson, a psychologist. (R. 242.)

Plaintiff was treated by Dale G. Simpson, Ph.D. from August through November of 2002. (R. 276.) Dr. Simpson's Summary of Psychological Services reveals that Plaintiff displayed "delusional thinking such as she was here helping to find Amelia Earhart, that she was raised by Indians or Japanese, that she was positive Dr. Morgan had hypnotized her, and was not convinced that her husband was really her husband but another person who may look just like him." Dr. Simpson noted that her "defenses

6

were tenuous," and that he attempted "to go very carefully and slowly in these areas so as not to further stress her defenses and cause more deterioration." (R. 276.)

Plaintiff returned to Dr. Morgan on October 7, 2002 with complaints of insomnia. (R. 237.) Plaintiff questioned Dr. Morgan as to whether she had been hypnotized by him in the past. She reported feeling that he had hypnotized her because she will go to a dresser and something will tell her to get dressy underwear out of the drawer and put it on. Plaintiff stated that she thought Dr. Morgan hypnotized her since at one time during a visit he made the statement "with your permission," and she felt he was talking about hypnotizing her. Plaintiff was told to split her Toprol dose and take half an Ambien.

On September 2, 2003, Plaintiff presented to Dr. Morgan with complaints of depression and insomnia. Plaintiff reported that her depression was somewhat helped by the Lexapro, although she reported feeling not "totally normal." Plaintiff reported that her memory problems were progressing and that she had difficulty remembering things at home. Plaintiff reported that she started counseling with Dr. Simpson, but switched to a different counseling service due to cost constraints, and has since been unable to continue any counseling services because of cost constraints. (R. 165.)  Dr. Morgan diagnosed Plaintiff with subjective memory decline, possibly related/aggravated by depression, depression- stable- improved on Lexapro. Dr. Morgan recommended that Plaintiff see Dr. Bortnick for a neuropsychiatric evaluation to assess cognitive status. (R. 166.)

On November 6, 2003, Plaintiff returned to Dr. Morgan. (R. 222.) Plaintiff reported hearing voices in her bedroom that woke her up and also reported hearing moaning. Plaintiff stated that at another point she was in her bathroom and she thought

she heard someone say hello to her. Dr. Morgan noted that Plaintiff seemed to be very frightened by these episodes. Plaintiff reported that she was very depressed and did not feel like her medication was working. Dr. Morgan diagnosed Plaintiff with insomnia, depression, not resolved or responding to Lexapro, and psychiatric disturbance.

Plaintiff was evaluated by Gary Honickman, Ph.D, on January 27, 2004 at the request of the Office of Disability Determinations. (R. 178-179.) Dr. Honickman stated that Plaintiff's mood and affect were mildly to moderately depressed. Plaintiff reported memory difficulties when taking antidepressant medication and her thought content reflected some of her depression. Dr. Honickman stated that Plaintiff's insight and judgment were poor, she suffered from poor self esteem and experienced suicidal feelings. Dr. Honickman diagnosed Plaintiff with a dysthymic disorder.

After the date of Plaintiff's hearing, Plaintiff was evaluated by Linda S. Bojarski, Psy.D, on May 28, 2005, at the request of the Division of Disability Determinations. (R. 277-279.) Dr. Bojarksi found that Plaintiff was oriented in all three spheres. Her Immediate Memory index score of 89 on the WMS-III suggested Low Average immediate memory. Responses to structured questions assessing judgment and common sense reasoning were 75% accurate. Plaintiff had mild deficits in abstract thinking. Dr. Bojarski found that Plaintiff's test results were not consistent with significant memory deficits in any of the areas measured.

Plaintiff's MMPI-2 validity scales suggested the possibility of clinically severe neurotic or psychotic symptoms. Dr. Bojarski found that the profile was considered valid. Plaintiff's profile also suggested somatic complaints and the possibility of secondary gain associated with symptoms. People with this profile are often in conflict about

8

dependency and self-assertion and they often feel hopeless and despondent. Acute

psychological turmoil is suggested, as well as a schizoid lifestyle. People with this profile

tend to be withdrawn, secretive and seclusive. They often experience a high level of

apprehension and generalized anxiety, and are often plagued by self-doubts. There

may be obsessive thinking and/or compulsive behavior and a thought disorder cannot

be ruled out.

Dr. Bojarski noted that Plaintiff appears to have an adequate social support

system, engages in leisure activities, and is able to perform some household duties. Dr.

Bojarski diagnosed Plaintiff with Major Depressive Disorder, Recurrent, Severe; Pain

Disorder Associated with Both Psychological Factors and a General Medical Condition;

Anxiety Disorder Not Otherwise Specified; (Rule Out) Dependent Personality Disorder.

(R. 280.)

## IV.  DISCUSSION

Plaintiff raises several arguments on appeal. First, Plaintiff contends that the ALJ

erred by failing to make findings of fact regarding the mental demands of Plaintiff's past

relevant work as a cashier and by failing to evaluate whether the Plaintiff can perform

the mental demands of this job. Secondly, Plaintiff argues that the ALJ failed to explain

why he did not adopt the opinions of the state agency psychologists regarding Plaintiff's

mental limitations. Finally, Plaintiff argues that her due process rights were violated

because she was not provided the opportunity to respond to post-hearing evidence,

obtained from Dr. Bojarkski, a consultative physician who examined Plaintiff after the

hearing at the request of the ALJ.

The Court will turn first to Plaintiff's challenges to the ALJ's evaluation of whether Plaintiff could perform her past relevant work. While the Plaintiff bears the burden of proving she cannot meet the physical and mental demands of her past relevant work, either as she performed it in the past or as the work is generally performed in the national economy,[23] the ALJ must first develop a full and fair record concerning the issue.[24] In the absence of evidence of the physical or mental requirements and demands of a plaintiff's work, an ALJ cannot properly determine that plaintiff retains the residual functional capacity to perform the job.[25]

The Commissioner argues that the ALJ specifically cited to Plaintiff's description of her prior work and compared it to Plaintiff's RFC. This is only partially correct. While the ALJ did discuss the physical demands of Plaintiff's work as a cashier, the ALJ failed to address the mental demands of Plaintiff's past relevant work. For example, the ALJ noted in his decision that "claimant described her past work as a cashier as lifting no more than 10 pounds," and that Plaintiff "operated a cash register and bagged merchandise." There is, however, no mention in the decision of the *mental* demands of Plaintiff's past relevant work as a cashier. Although the ALJ determined that Plaintiff suffers from moderate limitations in her ability to maintain adequately her concentration, attention and pace and that she has moderate limitations in understanding and carrying out complex instructions, the ALJ did not discuss the decisions to be made, the stress

---

[23] Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir.1986).

[24] Schnorr v. Bowen, 816 F.2d 578, 681 (11th Cir.1987).

[25] See Paige v. Apfel, 2001 WL 936198 (S.D.Ala. 2001), (citing Nelms v. Bowen, 803 F.2d 1164, 1165 (11th Cir.1986)).

levels, the concentration requirements, or any of the other mental demands of her work as a cashier. Despite this failure the ALJ concluded that Plaintiff could perform her past relevant work as a cashier as she performed it.

The decision as to whether the claimant retains the functional capacity to perform past work has "far-reaching implications and must be developed and explained fully in the disability decision", and "every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit."[26] The claimant, of course, is the "primary source" for vocational documentation, and "statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work."[27]  In finding that an individual has the capacity to perform a past relevant job, the decision "must contain" a finding of fact as to the individual's RFC, a finding of fact as to the physical and mental demands of the past job, and a finding of fact that the individual's RFC would permit a return to her past job.[28]

In the instant case, the ALJ found that Plaintiff is moderately limited in her ability to adequately maintain her concentration, attention and pace and that her thought process is interrupted by symptoms of anxiety and depression, all of which could impact the ability to perform basic work skills depending upon the mental demands of the past occupation. Despite the importance of this inquiry the ALJ did not make any reference in his decision to the mental demands of Plaintiff's past relevant work, and he did not

---

[26] Id.

[27] SSR 82-62 (2007).

[28] Id.

discuss Plaintiff's ability to meet those demands given her deficiencies in concentration, attention and pace.[29]

Significantly, the ALJ found that Plaintiff could perform her past relevant work as *she performed it* and not that Plaintiff could perform her past relevant work as a cashier as the job is generally performed in the national economy. Although, a claimant is considered not disabled if she satisfies either test for determining whether a claimant can perform past relevant work, because the ALJ limited his finding to Plaintiff's past relevant work as she performed it, the Court does not need to address wether the alternative test would be satisfied.[30] Thus, the failure to address the mental demands of Plaintiff's job as a cashier as she performed it takes on added significance because the ALJ limited his finding to only one of the two tests for past relevant work.

The failure to discuss the mental demands of Plaintiff's past relevant work as a cashier was material to the evaluation of whether Plaintiff could perform past relevant work because the ALJ noted in his decision that Plaintiff had some level of mental limitations. For example, the ALJ stated that "great weight" was given to the opinion of Susan Conley, Ph.D., who found that Plaintiff performed tasks at a very slow pace and would likely have difficulty adjusting to frequently changing tasks. Dr. Conley also found

---

[29] See Paige v. Apfel, 2001 WL 936198 * 2 (holding that the ALJ's failure to make a finding of fact as to the mental demands of Plaintiff's past relevant work, despite finding that claimant had decreased concentration, persistence or pace, was reversible error).

[30] Had the ALJ considered the alternative test, the evidence probably would not have supported a conclusion that Plaintiff could perform her past relevant work. According to the Dictionary of Occupational Titles, the job of cashier requires a reasoning level of three, which means an individual must have the ability to understand and carry out detailed instructions. Further, a cashier must apply commonsense understanding to carry out instructions furnished in written oral, or diagrammatic form, and must deal with problems involving several concrete variables in or from standardized situations. D.O.T., Vol. II at 1011, vol.1 at 281.

that while Plaintiff is able to comprehend simple instructions, she would have difficulty performing complex and/or detailed tasks. Dr. Conley further noted that Plaintiff was suspicious of others and might have difficulty accepting criticism from supervisors.[31] In addition, Val J. Bee, Psy.D, another state agency psychologist, who was accorded "great weight"[32] by the ALJ, also found that Plaintiff was moderately limited in her ability to carry out detailed instructions.[33]

Accordingly, the ALJ was required to assess the mental demands of Plaintiff's past relevant work and then determine whether Plaintiff could meet those demands based upon the mental limitations noted by the medical sources in this case. The ALJ failed to do so and instead focused upon the physical demands only of Plaintiff's past relevant work thus requiring that this case be reversed and remanded so that the ALJ can properly address the mental demands of Plaintiff's past relevant work and whether Plaintiff can meet those demands based upon Plaintiff's mental RFC.

Although the Court could stop its analysis at this point in view of the fact that this case is due to be reversed and remanded, the Court will, nonetheless, address the last issue raised by Plaintiff. The last issue raised by Plaintiff is that her due process rights were violated because the ALJ failed to provide her with an opportunity to respond to post-hearing evidence obtained from Dr. Bojarski, the consultative physician who

---

[31] R. 183.

[32] Although the ALJ's RFC assessment was less restrictive than the restrictions opined by the state agency physicians, Drs. Conley and Bee, this fact is not a reason for reversal of the decision. Indeed, the ALJ clearly stated that their opinions were accorded "great weight" because they were consistent with the opinions of Drs. Honickman and Bojarski. An ALJ is required to consider the totality of the evidence in determining Plaintiff's limitations. See 20 C.F.R. § 404.1545(a)(3).

[33] R. 257.

examined Plaintiff after the hearing at the request of the ALJ. This argument lacks merit because - as the Commissioner points out - a copy of the letter sent to Plaintiff concerning the additional evidence gathered from Dr. Bojarski by the ALJ is in the file. The letter expressly advises Plaintiff of her option to request a supplemental hearing and her right to subpoena Dr. Bojarski regarding her medical findings, if Plaintiff so chose.[34] Thus, assuming the letter was received the Plaintiff cannot complain that she did not receive due process.

Alternatively, even assuming *arguendo* that Plaintiff never received the letter, the Plaintiff still cannot complain because she cannot point to any prejudice as a result of her failure to submit additional evidence. The conclusion that Plaintiff was not prejudiced is underscored by the fact that Dr. Bojarkski's report is generally consistent with the other evidence of record, including the opinions of Drs. Conley, Honickman, and Bee, all of whom found that Plaintiff suffered from mild to moderate psychological limitations.

Accordingly, because Dr. Bojarski's medical opinions do not directly contradict the medical evidence regarding Plaintiff's mental limitations and instead are generally consistent with the other medical evidence, the submission of supplemental evidence to respond to Dr. Bojarski's report would not have made a difference.[35] In any event because this case is being remanded for further proceedings the Plaintiff will have the

---

[34] R. 24-25.

[35] *See,* James v. Barnhart, 177 Fed.Appx. 875, 877, 206 WL 995363 (11th Cir. 2006); Demenech v. Secretary of Health and Human Services, 913 F.2d 882, 885 (11th Cir. 1990).

opportunity to submit any new or additional evidence not previously submitted to the

ALJ, including any supplemental evidence that is responsive to Dr. Bojarski's report.

## V.  <u>CONCLUSION</u>

In light of the above, this action is due to be **REVERSED AND REMANDED** to

the Commissioner of Social Security in accordance with sentence four of 42 U.S.C. §

405(g) for further proceedings consistent with Order. The Clerk is directed to enter

judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on September 25, 2007.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel

15